1

2

3

4

5

6

7

8                           UNITED STATES DISTRICT COURT

9                          EASTERN DISTRICT OF CALIFORNIA

10

11   ARACELI MORA,                          Case No. 1:22-cv-00074-TLN-CDB (SS)

12              Plaintiff,                   FINDINGS AND RECOMMENDATIONS
                                            TO DENY PLAINTIFF'S MOTION FOR
13        v.                                SUMMARY JUDGMENT AND AFFIRM
                                            THE COMMISSIONER OF SOCIAL
14   COMMISSIONER OF SOCIAL SECURITY,        SECURITY'S DECISION[1]

15              Defendant.                   14-DAY DEADLINE

16                                           (Docs. 18, 22, 25)

17

18        Plaintiff Araceli Mora ("Plaintiff") seeks judicial review of a final decision of the

19   Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for

20   disability benefits under the Social Security Act.  (Doc. 1).  The matter is currently before the

21   Court on the parties' briefs, which were submitted without oral argument.  (Docs. 18, 22, 25).

22   Upon review of the Administrative Record ("AR") and the parties' briefs, the undersigned

23   recommends that the Commissioner's decision be affirmed.

24   **I.       BACKGROUND**

25        **A.  Administrative Proceedings and ALJ's Decision**

26        On September 10, 2019, Plaintiff filed a Title II application for disability insurance

27   _____

28        [1] This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and
     Local Rule 302(c)(15) (E.D. Cal. 2022).

1    benefits ("DIB") and a Title XVI application for supplemental security income ("SSI").  (AR

2    258-78).  Plaintiff's SSI application was denied on September 17, 2019, because her resources

3    combined with her spouse's resources exceeded the $3000.00 limit.  (AR 98-105).  Nothing in the

4    record indicates Plaintiff appealed this determination.[2]

5         Plaintiff's DIB application was denied initially and upon reconsideration, and Plaintiff

6    requested a hearing before an administrative law judge ("ALJ").  (AR 73-96, 120-21).  On May

7    25, 2021, ALJ Nikki Hall held a hearing, during which Plaintiff, represented by counsel and with

8    the assistance of a Spanish interpreter, and an independent vocational expert ("VE") testified.

9    (AR 52-72).  The ALJ issued her decision on June 21, 2021, finding Plaintiff not disabled.  (AR

10   32-47).  On November 29, 2021, the Appeals Council denied Plaintiff's request for review.  (AR

11   1-3).

12        In her decision, the ALJ engaged in the five-step sequential evaluation process set forth by

13   the Social Security Administration.  20 C.F.R. §§ 404.1520(a), 416.920(a).  At step one, the ALJ

14   found Plaintiff had not engaged in substantial gainful activity since September 17, 2018, the

15   alleged onset date.  (AR 34).  At step two, the ALJ determined that Plaintiff had the following

16   severe impairments: "restless legs syndrome; remote assessment of West Nile Virus with

17   encephalitis and transverse myelitis/varicella zoster meningitis; degenerative disc disease of the

18   lumbar, thoracic and cervical spine; moderate major depression, single episode; vertigo;

19   anxiety/other specified anxiety disorder/anxiety with severe panic attacks, improved; mixed

20   anxiety and depressive disorder; and amnesia."  (AR 34).  At step three, the ALJ found that

21   Plaintiff did not have an impairment, or combination of impairments, that met or medically

22   exceeds the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix

23   1.  (AR 35-38).

24        The ALJ determined Plaintiff had the residual functional capacity ("RFC") to perform

25   light work with the following additional limitations:

26   _____

27        [2] Because Plaintiff did not appeal the initial denial of her SSI claim through the
     administrative process, only her DIB claim is before the Court in this appeal.  *See Sims v. Apfel*,
28   530 U.S. 103, 107 ("If a claimant fails to request review from the [Appeals] Council, there is no
     final decision and, as a result, no judicial review in most cases.").

work should not require the climbing of ladders, ropes, or scaffolds, or exposure to hazards, such as unprotected heights, dangerous unshielded moving mechanical parts, or commercial driving; work should require little to no judgment to do simple duties that can be learned on the job through either a short demonstration or by training of up to and including one month; work should not require greater than occasional interaction with co-workers or the general public; work should not require greater than occasional interaction with supervisors once the job is learned and duties are assigned; work should involve tasks dealing mainly with "things" rather than people; and work should have no greater than occasional changes in work routine or work setting.

(AR 38).

At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. (AR 45). The ALJ classified Plaintiff as a younger individual with a limited education. (AR 46). At step five, the ALJ concluded that based on Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (AR 46). Specifically, based on the testimony from the VE, the ALJ concluded Plaintiff could perform work as a garment sorter, housekeeper cleaner, and collator operator. (AR 46). Thus, the ALJ concluded that Plaintiff had not been under a disability from September 17, 2018, through the date of the decision. (AR 47).

**B. Medical Record and Hearing Testimony**

The relevant hearing testimony and medical record were reviewed by the undersigned and will be referenced below as necessary to the undersigned's recommendation.

**II.    STANDARD OF REVIEW**

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id*. (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must

1    consider the entire record as a whole rather than searching for supporting evidence in

2    isolation. *Id.*

3         The court will review only the reasons provided by the ALJ in the disability determination

4    and may not affirm the ALJ on a ground upon which he did not rely. Social Security Act § 205,

5    42 U.S.C. § 405(g). In reviewing a denial of benefits, a district court may not substitute its

6    judgment for that of the Commissioner. "The court will uphold the ALJ's conclusion when the

7    evidence is susceptible to more than one rational interpretation." *Tommasetti v. Astrue*, 533 F.3d

8    1035, 1038 (9th Cir. 2008). Further, a district court will not reverse an ALJ's decision on account

9    of an error that is harmless. *Id.* An error is harmless where it is "inconsequential to the [ALJ's]

10   ultimate nondisability determination." *Id.* (quotation and citation omitted). The party appealing

11   the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v.*

12   *Sanders*, 556 U.S. 396, 409-10 (2009).

13        A claimant must satisfy two conditions to be considered "disabled" and eligible for

14   benefits within the meaning of the Social Security Act. First, the claimant must be "unable to

15   engage in any substantial gainful activity by reason of any medically determinable physical or

16   mental impairment which can be expected to result in death or which has lasted or can be

17   expected to last for a continuous period of not less than twelve months." 42 U.S.C. §

18   1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only

19   unable to do his previous work[,] but cannot, considering his age, education, and work

20   experience, engage in any other kind of substantial gainful work which exists in the national

21   economy." 42 U.S.C. § 1382c(a)(3)(B).

22        The Commissioner has established a five-step sequential analysis to determine whether a

23   claimant satisfies the above criteria. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v); 20 C.F.R. §

24   416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20

25   C.F.R. § 404.1520(a)(4)(i); 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaged in

26   "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20

27   C.F.R. § 404.1520(b); 20 C.F.R. § 416.920(b).

28        If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step

4

two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. § 404.1520(a)(4)(ii); 20 C.F.R. § 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. § 404.1520(c); 20 C.F.R. § 416.920(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 404.1520(c); 20 C.F.R. § 416.920(c).

At step three, the Commissioner compares the claimant's impairment to impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. § 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. § 404.1520(d); 20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations (20 C.F.R. § 404.1545(a)(1); 20 C.F.R. § 416.945(a)(1)), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. § 404.1520(a)(4)(iv); 20 C.F.R. § 416.920(a)(4)(iv).  If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 404.1520(f); 20 C.F.R. § 416.920(f).  If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy.  20 C.F.R. § 404.1520(a)(4)(v); 20 C.F.R. § 416.920(a)(4)(v).  In making this determination, the

1    Commissioner must also consider vocational factors such as the claimant's age, education, and

2    past work experience.  20 C.F.R. § 404.1520(a)(4)(v); 20 C.F.R. § 416.920(a)(4)(v).  If the

3    claimant is capable of adjusting to other work, the Commissioner must find that the claimant is

4    not disabled.  20 C.F.R. § 404.1520(g)(1); 20 C.F.R. § 416.920(g)(1).  If the claimant is not

5    capable of adjusting to other work, the analysis concludes with a finding that the claimant is

6    disabled and is therefore entitled to benefits.  20 C.F.R. § 404.1520(g)(1); 20 C.F.R. §

7    416.920(g)(1).

8         The claimant bears the burden of proof at steps one through four above.  *Tackett v. Apfel*,

9    180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the

10   Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such

11   work "exists in significant numbers in the national economy."  20 C.F.R. § 416.960(c)(2); *Beltran*

12   *v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

13   **III.    ISSUES AND ANALYSIS**

14        Plaintiff seeks judicial review of the Commissioner's final decision denying her DIB

15   application.[3]  (Doc. 1).  Plaintiff raises the following issues:

16        1.  The ALJ committed harmful error by failing to identify an apparent conflict between

17            the DOT and VE testimony per the requirements of SSR 00-4p.  (Doc. 18 at 2).

18        2.  The ALJ committed harmful error by failing to provide the requisite "clear and

19            convincing" reasons for rejecting psychiatric symptomology evidence.  (*Id.*).

20   The undersigned addresses the second issue first so that the issues may be addressed in the order

21   in which they arise in the sequential analysis.

22   ///

23

24        [3] Plaintiff's initial complaint challenges the denial of her "application for Social Security

25   Disability Insurance *and* Supplement Security Income benefits."  (Doc. 1 at 1 (emphasis added)).
     Similarly, her brief appears to challenge the denial of both applications.  (*See* Doc. 18 at 2 (stating

26   Plaintiff's applications (plural) were denied initially and on reconsideration)).  However, as
     discussed above, Plaintiff's SSI application was denied based on her resources exceeding the

27   limit and Plaintiff did not further appeal this decision.  (*See* AR 98-105).  Accordingly, the ALJ's

28   decision only addressed Plaintiff's DIB application.  (*See* AR 32).  Thus, only Plaintiff's DIB
     claim is before the Court on appeal.

1    **A. Whether the ALJ Provided "Clear and Convincing" Reasons for Rejecting**

2    **Plaintiff's Testimony**

3    Plaintiff challenges the ALJ's rejection of her symptom testimony, specifically with

4    respect to her mental abilities.

5    **1. Legal Standard**

6    The ALJ is responsible for determining credibility,[4] resolving conflicts in medical

7    testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). A

8    claimant's statements of pain or other symptoms are not conclusive evidence of a physical or

9    mental impairment or disability. 42 U.S.C. § 423(d)(5)(A); *see* SSR 16-3p, 2017 WL 5180304, at

10   \*2 ("an individual's statements of symptoms alone are not enough to establish the existence of a

11   physical or mental impairment or disability"); *see also Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir.

12   2007) ("An ALJ is not required to believe every allegation of disabling pain or other non-

13   exertional impairment.") (internal quotation marks and citation omitted); *Molina v. Astrue*, 674

14   F.3d 1104, 1104 (9th Cir. 2012) (same), *superseded on other grounds by* 20 C.F.R. §

15   404.1502(a). Determining whether a claimant's testimony regarding subjective pain or symptoms

16   is credible requires the ALJ to engage in a two-step analysis. (*Id.* at 1112). The ALJ must first

17   determine if "the claimant has presented objective medical evidence of an underlying impairment

18   which could reasonably be expected to produce the pain or other symptoms alleged."

19   *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal punctuation and citations

20   omitted). This does not require the claimant to show that her impairment could be expected to

21   cause the severity of the symptoms that are alleged, but only that it reasonably could have caused

22   some degree of symptoms. *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

23   If the first step is met and there is no evidence of malingering, "the ALJ must provide

24

_____

25   [4] SSR 16-3p applies to disability applications heard by the agency on or after March 28,
     2016. Ruling 16-3p eliminated the use of the term "credibility" to emphasize that subjective
26   symptom evaluation "is not an examination of an individual's character," but an endeavor to
     determine how "symptoms limit an individual's ability to perform work-related activities." SSR
27   16-3p, 2017 WL 5180304, at \*3. Nevertheless, the Ninth Circuit continues to reference an ALJ's
     "credibility assessment" when reviewing claims that an ALJ impermissibly discounted a
28   claimant's testimony. *E.g.*, *Coleman v. Saul*, 979 F.3d 751, 756 (9th Cir. 2020).

1  'specific, clear and convincing reasons for' rejecting the claimant's testimony." *Treichler v.*

2  *Comm'r of Soc. Sec.*, 775 F.3d 1090, 1102 (9th Cir. 2014) (*quoting Smolen*, 80 F.3d at 1281).

3  *See Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1160 (9th Cir. 2008) (noting an adverse

4  credibility finding must be based on "clear and convincing reasons").  The ALJ must make

5  findings that support this conclusion, and the findings must be sufficiently specific to allow a

6  reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds

7  and did not arbitrarily discredit the claimant's testimony.  *Moisa v. Barnhart*, 367 F.3d 882, 885

8  (9th Cir. 2004).

9       The Ninth Circuit does "not require ALJs to perform a line-by-line exegesis of the

10  claimant's testimony, nor do they require ALJs to draft dissertations when denying benefits."

11  *Stewart v. Kijakazi*, No. 1:22-cv-00189-ADA-HBK, 2023 WL 4162767, at *5 (E.D. Cal. Jun. 22,

12  2023), *findings and recommendations adopted*, 2023 WL 5109769 (Aug. 8, 2023); *see Record v.*

13  *Kijakazi*, No. 1:22-cv-00495-BAM, 2023 WL 2752097, at *4 (E.D. Cal. Mar. 31, 2023) ("Even if

14  the ALJ's decision is not a model of clarity, where the ALJ's 'path may reasonably be discerned,'

15  the Court will still defer to the ALJ's decision.") (*quoting Wilson v. Berryhill*, 757 Fed. Appx.

16  595, 597 (9th Cir. 2019)). "The standard isn't whether our court is convinced, but instead,

17  whether the ALJ's rationale is clear enough that it has the power to convince." *Smartt v.*

18  *Kijakazi*, 53 F.4th 489, 494 (9th Cir. 2022) (the clear and convincing standard requires an ALJ to

19  show her work).

20       The ALJ may consider numerous factors in weighing a claimant's credibility, including

21  "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying,

22  prior inconsistent statements concerning the symptoms, and other testimony by the claimant that

23  appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to

24  follow a prescribed course of treatment; and (3) the claimant's daily activities." *Smolen*, 80 F.3d

25  at 1284.  In evaluating the credibility of symptom testimony, the ALJ must also consider the

26  factors identified in SSR 16-3P.  (*Id.*) (citing *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir.

27  1991)).  Accord *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226 (9th Cir. 2009). These

28  factors include:

1

2

(1) Daily activities; (2) The location, duration, frequency, and intensity of pain or other symptoms; (3) Factors that precipitate and aggravate the symptoms; (4) The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; (5) Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; (6) Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (*e.g.*, lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

3

4

5

6

7   SSR 16-3P, 2017 WL 5180304, at *7. *See* 20 C.F.R. § 404.1529(c)(3). If the ALJ's finding is

8   supported by substantial evidence, the court may not engage in second-guessing. *Tommasetti*,

9   533 F.3d at 1039 (citations and internal quotation marks omitted).

10   The clear and convincing standard is "not an easy requirement to meet," as it is "'the most

11   demanding requirement in Social Security cases.'" *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th

12   Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)). "A

13   finding that a claimant's testimony is not credible must be sufficiently specific to allow a

14   reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible

15   grounds and did not arbitrarily discredit a claimant's testimony regarding pain." *Brown-Hunter v.*

16   *Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (citation and internal quotation marks omitted).

17   "The fact that a claimant's testimony is not fully corroborated by the objective medical

18   findings, in and of itself, is not a clear and convincing reason for rejecting it." *Vertigan v. Halter,*

19   260 F.3d 1044, 1049 (9th Cir. 2001). *See* 20 C.F.R. § 404.1529(c)(2) ("[W]e will not reject your

20   statements about the intensity and persistence of your pain or other symptoms or about the effect

21   your symptoms have on your ability solely because the objective medical evidence does not

22   substantiate your statements."). Rather, where a claimant's symptom testimony is not fully

23   substantiated by the objective medical record, the ALJ must provide additional reasons for

24   discounting the testimony. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). "The ALJ must

25   specify what testimony is not credible and identify the evidence that undermines the claimant's

26   complaints – '[g]eneral findings are insufficient.'" (*Id.*) (quoting *Reddick v. Chater*, 157 F.3d 715,

27   722 (9th Cir. 1998)).

28   However, the medical evidence "is still a relevant factor in determining the severity of the

9

claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The Ninth Circuit has distinguished testimony that is "uncorroborated" by the medical evidence from testimony that is "contradicted" by the medical records and concluded that contradictions with the medical records, by themselves, are enough to meet the clear and convincing standard. *Hairston v. Saul*, 827 Fed. Appx. 772, 773 (9th Cir. 2020) (*quoting Carmickle*, 533 F.3d at 1161).

### 2. Analysis

Here, Plaintiff testified she could not work due to panic attacks and vertigo. (AR 59). She drove but "just for the essentials," including taking her son to school, to get medications, and to buy food. (AR 58). Her depression prevented her from completing chores or tasks at home and she had difficulty sharing with other people. (AR 60). She was only able to concentrate for two minutes before her mind wandered off. (AR 60-61). Plaintiff also testified to having memory issues, such as difficulty remembering appointments and needing reminders to take her medication. (AR 61). She suffered panic attacks once to twice a month, during which she was unable to move or speak and had no control over her body. (AR 62).

In her decision, the ALJ accurately summarized Plaintiff's allegations but concluded that while Plaintiff's impairments could be expected to cause the alleged symptoms, her allegations concerning the intensity, persistence, and limiting effects of her symptoms were not consistent with the record. (AR 39). The ALJ summarized the relevant medical records in support of her conclusion, noting Plaintiff received emergency treatment for a panic attack in June 2019 and reported having four anxiety attacks since her previous hospitalization for West Nile Virus. (AR 41 citing AR 460, 1766, 1770). Plaintiff again presented to the emergency room for an anxiety attack on September 6, 2019, but was in no acute distress and had intact insight and judgment after being given Ativan. (AR 42 citing AR 453). On September 11, 2019, Plaintiff presented to her doctor for anxiety and depression, at which time she was "well-groomed and well developed. She was cooperative, appeared engaged, and was not impulsive. She had good eye contact, euthymic mood, appropriate affect, logical associations, normal attention, and intact judgment." (AR 42 citing AR 1726). She was prescribed Cymbalta and Klonopin. (AR 42 citing AR 1726).

Nine days later, Plaintiff reported the medications were beneficial to her mood, panic attacks, and sleep, and on examination she was again "well groomed, cooperative, and fully oriented," with normal speech, average intelligence, intact insight and judgment, intact memory, unremarkable motor activity, euthymic mood, and an apathetic affect. (AR 42 citing AR 1721). Plaintiff continued to report improvement with her panic attacks over the following months. (AR 42 citing AR 1672, 1699, 1714). She reported panic attacks to neurology in June and July 2020 but noted the July panic attack was "not very strong." (AR 43 citing AR 1530, 1536). At an April 14, 2021 follow up visit for anxiety and medication refills, Plaintiff was able to speak in full sentences. (AR 44 citing AR 1604). The ALJ also noted instances throughout the records where Plaintiff reported participating in yoga classes and regular exercise, traveling to Mexico, cleaning the house, cooking, driving her children to school, and helping her children with homework. (AR 41-43 citing AR 456, 1672, 1720).

Based on this evidence and "[i]n order to accommodate [Plaintiff's] mental conditions of anxiety, depression, and amnesia," the ALJ included limitations in the RFC "to a range of unskilled, simple work, with additional social interaction limitations." (AR 45). However, the ALJ explained that further limitations were not warranted because "mental status examinations performed throughout the relevant time period have been mostly unremarkable, often showing the claimant to be alert, fully oriented, and cooperative, with a good mood and affect, logical thoughts, and intact insight and judgment." (AR 45). The ALJ specifically noted that while there were "a few assessments of decreased memory with neurologic testing," Plaintiff also reported that she cooked, cleaned, drove, and helped her children with homework and the evidence also showed an overall improvement in the duration and intensity of her panic attacks over time. (AR 45).

Plaintiff argues "[t]he ALJ committed harmful error by failing to provide the requisite 'clear and convincing' reasons to reject the evidence of record supporting [Plaintiff's] psychological symptomology evidence." (Doc. 18 at 15). Plaintiff argues the ALJ mischaracterized the nature of her mental status exams as "mostly unremarkable often showing the claimant to be alert, fully oriented and cooperative, with a good mood and affect, logical

1    thoughts and intact insight and judgment" when the record reveals documentation of abnormal

2    mood, abnormal affect, abnormal behavior, abnormal insight, and abnormal speech and thought

3    process. (*Id.* at 16). Plaintiff asserts "the ALJ fails to discuss the nonconservative nature of [her]

4    psychiatric treatment," citing her treatment with a range of various medications. (*Id.* at 16-17).

5    Plaintiff also challenges the ALJ's consideration of her activities of daily living, arguing the ALJ

6    did not discuss certain limitations Plaintiff testified to regarding her abilities. (*Id.* at 17). Finally,

7    Plaintiff argues the ALJ failed to cite testimony or medical evidence to support the conclusion

8    that she demonstrated "overall improvement in the duration and intensity" of her panic attacks

9    over time. (*Id.* at 18).

10        In response, Defendant argues "the ALJ offered three reasons with the power to convince

11   a reasonable person that Plaintiff's allegations of panic attacks and other mental symptoms were

12   not entirely consistent, and she did so by citing to specific, clear, and convincing examples from

13   across the relevant period." (Doc. 22 at 6). Defendant asserts the "ALJ traced Plaintiff's reports

14   of panic and anxiety attacks across the record and concluded they had been ameliorated with

15   medication," but the ALJ did not conclude "Plaintiff's symptoms had completely resolved" and

16   "went on to assign significant limitations in Plaintiff's abilities to simple duties with significant

17   social and stressor limitations." (*Id.* at 6-7). As to Plaintiff's daily activities, Defendant argues

18   the ALJ properly found her hearing testimony inconsistent with her earlier reports to treating

19   providers and "[t]he caveats Plaintiff points to are the same qualifications that the ALJ found

20   inconsistent with Plaintiff's September 2019 reports." (*Id.* at 7-8). Finally, Defendant argues the

21   ALJ "reasonably found the objective medical evidence did not entirely support Plaintiff's

22   allegations of total disability" and to the extent "Plaintiff offers an alternative interpretation of the

23   record by citing to eight findings," these findings mostly occurred during the time in which the

24   ALJ noted improvement first began and "Plaintiff has not shown that these abnormal findings

25   persisted after this period of improvement." (*Id.* at 8-9).

26        Plaintiff replies that "[a]lthough the Defendant puts forth their interpretation of how the

27   ALJ illustrated 'unremarkable' MSE findings, the Court is limited to reviewing the rationale put

28   forth by the ALJ and the not the Defense plucking examples from an ALJ's summary of medical

evidence." (Doc. 25 at 4 (record cite omitted)).  Similarly, Plaintiff argues the ALJ failed to discuss "her specific hearing testimony regarding the circumstances surrounding her reduced abilities to perform ADLs" and Defendant "attempts to remedy the ALJ's error by citing to random portions of the record, not pin point cited by the ALJ, in the ALJs rejection of symptomology." (*Id.* at 5-6).  As to improvement, Plaintiff argues the ALJ did not cite any objective evidence of record documenting that any treating physician noted such and "[t]he Defense's *post-hoc* attempts to remedy the ALJ's error here are not sufficient." (*Id.* at 6).

After review of the ALJ's decision and the corresponding record, the undersigned concludes the ALJ sufficiently explained her reasons for discounting Plaintiff's symptom testimony based on evidence in the record.  The undersigned can readily follow her reasoning and meaningfully review those reasons.  *See, e.g., Guthrie v. Kijakazi*, No. 21-36023, 2022 WL 15761380, at *1 (9th Cir. Oct. 28, 2022) (citing *Kaufmann v. Kijakazi*, 32 F.4th 843, 851 (9th Cir. 2022) (stating that the court considers "the ALJ's full explanation" and the "entire record")); *Mazon v. Comm'r of Soc. Sec.*, No. 1:22-cv-00342-SAB, 2023 WL 3177797, at *7 (E.D. Cal. May 1, 2023) (the ALJ's sequence of summarizing evidence followed by giving specific findings followed a conventional organization for the ALJ's decision writing which is sufficiently clear for judicial review).  Specifically, considering the ALJ's decision as a whole, it is clear that the ALJ rejected Plaintiff's testimony that she could not work due to panic attacks.  As detailed above, the ALJ properly relied on her correct assessment that the medical records—including Plaintiff's own previous reports to providers—did not support the level of limitation she alleged.  Further, her testimony was inconsistent with her reports to providers cited above that her panic attacks were improving.  Similarly, Plaintiff's characterization of the severity of her physical functioning was inconsistent with her reported engagement in activities such as yoga and regular exercise.  *See Smolen*, 80 F.3d at 1284 (noting an ALJ properly may assess a claimant's credibility based on prior inconsistent statements concerning the symptoms, as well as the claimant's daily activities).

While Plaintiff cites to additional records to support her argument that the ALJ mischaracterized the evidence, the ALJ was not required to discuss every piece of evidence in rendering her decision.  *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003).

1  While the record may have also supported a different conclusion from the ALJ, it is not for this

2  court to "reweigh the evidence or substitute [its] judgment for that of the ALJ." *Ahearn v. Saul*,

3  988 F.3d 1111, 1115 (9th Cir. 2021).  Rather, "[w]hen the evidence can rationally be interpreted

4  in more than one way, the court must uphold the ALJ's decision." *Id.* at 1115-16 (alterations

5  omitted.

6      Overall, the ALJ provided clear and convincing reasons for discounting Plaintiff's

7  testimony and those reasons are supported by substantial evidence.

8      **B.  Whether the ALJ Failed to Identify a Conflict Between the DOT and VE**

9          **testimony**

10     Plaintiff next challenges the step five determination, arguing "the ALJ harmfully erred by

11  failing to specifically identify and resolve an apparent conflict between the 'concrete' and

12  'specific' MRFC limitation to work involving 'tasks dealing mainly with "things" rather than

13  people' and the three unskilled jobs identified by the VE." (Doc. 18 at 11).  Additionally,

14  Plaintiff argues "the ALJ harmfully erred by failing to accurately present [Plaintiff's] educational

15  and literacy profile to the [VE] and relying on the jobs identified by the VE, all of which require a

16  language proficiency of Level One." (*Id.* at 12).  Specifically, Plaintiff argues the ALJ failed to

17  consider and accommodate her inability to speak, read, or write in English.  (*Id.* at 12-14).

18     Defendant responds that while Plaintiff alleges there is a conflict between the MRFC

19  limitations and the DOT, she "fails to explain what that conflict is." (Doc. 22 at 10).  Defendant

20  argues "the DOT does not specifically address all of the social limitations in Plaintiff's RFC"

21  such that "there were no incompatible elements in opposition – the vocation expert said one thing

22  and the DOT did not contradict her." (*Id.*).  Further, Defendant argues Plaintiff has not shown

23  "that the specific occupations identified at step five would be inconsistent with a limitation to

24  tasks dealing mainly with things rather than people" because all three jobs are rated as having

25  "significant" interaction with thing and "not significant" interaction with people.  (*Id.* at 11).

26  Concerning Plaintiff's education level, Defendant argues "the ALJ properly declined to assess

27  Plaintiff's ability to communicate in English" because under Social Security Ruling ("SSR") 20-

28  1p, "the agency considers a person's education level when assessing her language abilities

14

1    whether she is able to speak or read English or not." (*Id.* at 12).

2         In reply, Plaintiff argues that a limitation to unskilled work does not account for

3    limitations on social interactions. (Doc. 25 at 2-3). Although not entirely clear, Plaintiff appears

4    to argue that because the ALJ limited Plaintiff to "tasks dealing mainly with 'things' rather than

5    people," the VE was required to specifically discuss the social interactions required by the

6    identified jobs. (*Id.* at 3). Plaintiff does not address Defendant's assertion that due to a change in

7    the regulations, the ALJ was no longer required to consider her ability to communicate in English.

8    (*See id.* at 2-7).

9         "At Step Five, the Commissioner has the burden to identify specific jobs existing in

10   substantial numbers in the national economy that a claimant can perform despite his identified

11   limitations." *Rounds v. Comm'r of Soc. Sec. Admin.*, 807 F.3d 996, 1002 (9th Cir. 2015)

12   (quotations and alterations omitted). "[W]hen there is an apparent conflict between the

13   vocational expert's testimony and the DOT—for example, expert testimony that a claimant can

14   perform an occupation involving DOT requirements that appear more than the claimant can

15   handle—the ALJ is required to reconcile the inconsistency." *Id.* (quoting *Zavalin v. Colvin*, 778

16   F.3d 842, 846 (9th Cir. 2015)). Thus, under SSR 00-4p, "the ALJ has an affirmative duty to ask

17   the expert to explain the conflict and then determine whether the vocational expert's explanation

18   for the conflict is reasonable before relying on the expert's testimony to reach a disability

19   determination." *Id.* Any conflict between the testimony and the DOT "must be 'obvious or

20   apparent' to trigger the ALJ's obligation to inquire further." *Leach v. Kijakazi*, 70 F.4th 1251,

21   1255 (9th Cir. 2023).

22        Importantly, it is not every potential conflict between the DOT and VE testimony that

23   must be addressed. As the Ninth Circuit has explained, "not all potential conflicts between an

24   expert's job suitability recommendation and the [DOT's] listing of 'maximum requirements' for

25   an occupation will be apparent or obvious" and "an ALJ need only follow up on those that are."

26   *Gutierrez v. Colvin*, 844 F.3d 804, 807-08 (9th Cir. 2016). For example, there is no "obvious or

27   apparent" conflict between work as a cashier and a limitation to no overhead reaching with a

28   single arm because "it is unlikely and unforeseeable that a cashier would need to reach overhead,

and even more rare for one to need to reach overhead with both arms." *Lamear v. Berryhill*, 865 F.3d 1201, 1205 (9th Cir. 2017) (quoting *Gutierrez*, 844 F.3d at 808-09, 809 n.2). However, there is an apparent conflict between work as an office helper, mail clerk, or parking lot cashier and limitations on the ability to handle, finger, and feel with one hand because the DOT's "lengthy descriptions for these jobs strongly suggest that it is likely and foreseeable that using both hands would be necessary to perform essential, integral, or expected tasks in an acceptable and efficient manner." *Id.*; *see also Rounds*, 807 F.3d at 1002-03 (apparent conflict existed where claimant was limited to "one to two step tasks," which exactly matches "the Level One [Reasoning] standard of carrying out 'simple one- or two-step instructions' and is exceeded by the Level Two standard of carrying out 'detailed but uninvolved written or oral instructions," and VE identified jobs requiring reasoning Level Two).

Here, as noted by Defendant, while Plaintiff generally argues the ALJ failed to address an apparent conflict, she does not identify the specific conflict between each of the descriptions listed in the DOT and the RFC's limitations. Further, after a review of the DOT definitions for each of the identified jobs, there is no apparent conflict between any of the jobs and the RFC limitation to work mostly with things rather than people. The DOT definition of garment sorter provides: "Sorts finished garments, such as shirts, dresses, and pajamas, according to lot and size numbers recorded on tags and labels attached to garments. May fold and package garments in boxes and bags. May iron garments prior to folding." *Garment Sorter*, DOT 222.687-014, *available at* 1991 WL 672131. The definition of cleaner provides:

> Cleans rooms and halls in commercial establishments, such as hotels, restaurants, clubs, beauty parlors, and dormitories, performing any combination of the following duties: Sorts, counts, folds, marks, or carries linens. Makes beds. Replenishes supplies, such as drinking glasses and writing supplies. Checks wraps and renders personal assistance to patrons. Moves furniture, hangs drapes, and rolls carpets.

*Cleaner, housekeeping*, DOT 323.687-014, *available at* 1991 WL 672783. Finally, the definition of collator operator provides: "Tends machine that assembles pages of printed material in numerical sequence: Adjusts control that regulates stroke of paper pusher, according to size of paper. Places pages to be assembled in holding trays. Starts machine. Removes assembled pages

16

from machine." *Collator operator*, DOT 208.685-010, *available at* 1991 WL 671753. Each of these definitions describe work with things without reference to any interaction with people and a circumstance where the work for each of these positions would shift to being more people-focused is not foreseeable based on these definitions. Accordingly, there is no apparent conflict with the RFC limitation to work mainly with things and the ALJ's duty to inquire further was not triggered.

Concerning Plaintiff's ability to read, write, and speak in English, Defendant correctly notes (Doc. 22 at 11-13) that the current regulations do not require consideration of Plaintiff's English literacy. *See Vang v. Comm'r of Soc. Sec.*, No. 1:21-cv-00488-SAB, 2022 WL 17812859, at *6 (E.D. Cal. Dec. 19, 2022). *Cf. Rubio v. O'Malley*, No. 3:23-cv-00399-CSD, 2024 WL 2518810, at * 7 (D. Nev. May 23, 2024 (agreeing that while an ALJ is no longer required to address English proficiency limitations with the VE at step five, a conflict could arise where an ALJ does ask the VE to consider whether a claimant who only speaks Spanish could perform the identified jobs, and the VE indicated that she could not). While a previous version of 20 C.F.R. § 404.1564(b) specifically indicated the "term education also includes how well you are able to communicate in English," revisions to the regulation effective April 27, 2020, and applicable to claims (such as Plaintiff's) pending on that date, eliminated all reference to a claimant's ability to communicate in English. 20 C.F.R. § 404.1564(b); *see Vang*, 2022 WL 17812859 at *6 ("[T]he regulation concerning education has been amended to eliminate any reference to the ability to speak, read and understand English.").

To the extent Plaintiff is arguing the ALJ should have sought clarification regarding Plaintiff's education level based on her testimony that she completed "secondary level" education in Mexico, Plaintiff indicated on her disability application that she completed ninth grade. (*See* AR 57, 304). This evidence supports the ALJ's conclusion that Plaintiff had a limited education. *See* SSR 20-01p, 2020 WL 1083309 (Mar. 9, 2020) ("We generally consider that a 7th grade through the 11th grad level of formal education is a limited education."). Under the current regulations and guidance, Plaintiff's inability to communicate in *English* was irrelevant to the disability determination. *See id.* ("Neither the country in which an individual was educated nor

the language an individual speaks informs us about whether the individual's reasoning,

arithmetic, and language abilities are commensurate with his or her formal education level.").

Rather, an individual is considered illiterate "only if the evidence supports a finding that the

individual is unable to read or write a simple message in *any* language." *Id.*  Here, there is no

evidence that Plaintiff cannot read and write in her native Spanish.  Thus, the ALJ did not err in

concluding Plaintiff had a limited education and declining to include language limitations in the

hypothetical to the VE.

Overall, the ALJ did not err in considering the VE's testimony at step five and the ALJ's

step five determination is supported by substantial evidence.

## IV.    RECOMMENDATIONS

For the reasons stated above, the undersigned **RECOMMENDS** that :

1. Plaintiff's Motion for Summary Judgment (Doc. 18) be DENIED;

2. The ALJ's decision be AFFIRMED;

3. The Clerk of Court be directed to enter judgment in favor of Defendant and close this
   case.

These findings and recommendations will be submitted to the United States District Judge

assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within **14 days** of

being served with these findings and recommendations, the parties may file written objections

with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings

and Recommendations."  The parties are advised that failure to file objections within the specified

time may result in the waiver of rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th

Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **June 12, 2025**

UNITED STATES MAGISTRATE JUDGE